**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| TONIA J. COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-01761-TWP-MJD |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Tonia J. Collins ("Ms. Collins"), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") regarding the calculation of Ms. Collins' Supplemental Security Income ("SSI") benefits. For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

**A.  Procedural History**

Ms. Collins was born December 20, 1965 and she has the following severe impairments: degenerative joint disease, borderline intellectual functioning, depression/anxiety/posttraumatic stress syndrome and fibromyalgia. On April 3, 2008 she applied for SSI and was awarded benefits on May 20, 2010. Tr. at 24-32. After Ms. Collins' benefit was computed to be less than the full amount, Tr. at 35-38, she requested reconsideration, which was denied, and on April 22, 2011, the Administrative Law Judge ("ALJ") affirmed the computation after a hearing. Tr. at 9-15. The ALJ's decision was affirmed by the Appeals Council, Tr. at 3-6, and on November 30, 2012, a complaint was filed in this Court requesting review of the agency's computation.

**B.     Factual Background**[1]

If a claimant receives in-kind support and maintenance, the Social Security Administration counts on-third of the federal benefit rate as additional income. C.F.R. §416.1131(a). Ms. Collins' benefit was reduced because the ALJ found that she received in-kind support and maintenance from her children, did not contribute towards their household expenses, and did not have a bona fide loan agreement with her children sufficient to qualify the agreement as a loan for the purposes of benefit calculation.

In her initial application for SSI, filed on April 3, 2008, Ms. Collins reported living with her daughter, Candace Collins. Tr. at 16-17. Specifically, Ms. Collins reported "I do not make payments toward the household expenses," and "I am not receiving any food or shelter from the people I live with for which I have an agreement to repay." Tr. at 17. Under penalty of perjury, Ms. Collins declared the information provided to be true and correct to the best of her knowledge. *Id*. At Ms. Collins' pre-effectuation review, Candace Collins denied the existence of any loan agreement, and James Collins, Ms. Collins' son, did not mention any such agreement. Tr. at 13-14.

On June 22, 2013, after her past due benefits had been reduced to account for in-kind support and maintenance, Ms. Collins submitted a signed agreement between herself and her children stating that she had an agreement with them to repay the support received for the previous five years. Tr. at 81. When confronted with the agreement's explicit contradiction of the testimony at her pre-effectuation review, Ms. Collins stated, candidly, that her "kids did not realize that saying there was no loan agreement would cause her to receive less back pay." Tr. at 34.

---

[1] Ms. Collins adopts the ALJ's recitation of the facts in her brief, Dkt. 25 at 2, and thus, facts are cited to the ALJ's April 22, 2011 decision, Tr. at 12-15.

At her hearing before the ALJ on February 25, 2011, Ms. Collins testified that she had entered into a verbal agreement to repay her children for any support provided during the application process and that she would pay them back out of her past due benefits when her SSI was approved. Tr. at 124. She testified that, since receiving her benefits, she had paid back $1,000.00 to both children, but also testified that she had only given her son $220.00 for Christmas presents and taken her granddaughter shopping one time. Tr. at 125. James Collins agreed that his mother had paid him some monies, though the amount was unclear. Tr. at 128-29.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 42 U.S.C. § 405(g). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176. Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

### B.  Benefit Calculation

SSI benefit eligibility is determined based on a claimant's income and resources. 42 U.S.C. § 1382; 20 C.F.R. § 416.1100. In calculating income, in-kind support and maintenance is also accounted for. 20 C.F.R. § 416.1130. "In-kind support and maintenance means any food or

shelter that is given to you or that you receive because someone else pays for it." *Id*. If a claimant lives in another person's household and receives both food and shelter from said person, one-third of the Federal benefit rate is counted as income in the form of in-kind support and maintenance. 20 C.F.R. § 416.1131. However, money borrowed as a loan does not qualify as income. 20 C.F.R. § 416.1103(f). Thus, under certain circumstances, in-kind support and maintenance may be considered a loan and not income.

> A loan means an advance from lender to borrower that the borrower must repay, with or without interest. A loan can be cash or an in-kind advance in lieu of cash. For example, an advance of food or shelter can represent a loan of the pro rata share of household operating expenses. This applies to any commercial or noncommercial loan (between relatives, friends or others) that is recognized as enforceable under State law. The loan agreement may be oral or written, as long as it is enforceable under State law.

Title XVI: SSI Loan Policy, Including Its Applicability to Advances of Food &/or Shelter, SSR 92-8P (S.S.A Sept. 8, 1992).

Under Indiana law, contracts based on past consideration are generally unenforceable.

> If a person has been benefited in the past by some act or forbearance for which he incurred no legal liability and afterwards, whether from good feeling or interested motives, he makes a promise to the person by whose act or forbearance he has benefited, and that promise is made on no other consideration than the past benefit, it is gratuitous and cannot be enforced; it is based on motive and not on consideration.

*Brown v. Addington*, 52 N.E.2d 640, 641 (Ind. Ct. App. 1944) (internal citations omitted); s*ee also* 6 Ind. Law Encyc. Contracts § 19 ("As a general rule, past consideration that imposed no obligation when it was furnished will not support a subsequent promise. A distinction must be made between consideration and motive. A mere moral obligation, without more, is not consideration, and although a person has benefited in the past by some act or forbearance for which he or she incurred no legal liability, his or her later promise, whether made from good

4

feeling or interested motives, to the person by whose act or forbearance the promisor has benefited is not enforceable.").

Further, the Social Security Administration's Program Operations Manual System ("POMS") is a primary source of information used by Social Security employees to process claims for Social Security benefits.[2]  Though the manual is not a product of formal rulemaking, it nevertheless warrants respect in evaluating benefits claims.  *See Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003).  The POMS lists five requirements that must be met in order for a loan agreement to be a bona fide loan for the purposes of benefit calculation; the loan must: 1) be enforceable under state law; 2) be in effect at the time the in-kind support and maintenance is provided; 3) contain an acknowledgment of an obligation to repay the loan that is unconditional and not dependent on an individual's receipt of benefits; 4) include a plan or schedule for repayment; and 5) repayment of the loan must be feasible.  POMS SI 00835.482.

### III.  THE ALJ'S DECISION

On April 22, 2011, the ALJ's determination found that Ms. Collins and her children did not have a qualifying loan agreement for the repayment of the in-kind support and maintenance she received prior to her pre-effectuation review.  Tr. at 12-15.  To reach this conclusion, the ALJ found that Ms. Collins' statements subsequent to her pre-effectuation review were not credible in light of their conflict with the unequivocal assertions in her initial application and at her pre-effectuation review.  Tr. at 14.  The ALJ highlighted the fact that every relevant action and statement by Ms. Collins prior to the reduction of her benefits expressly denied the existence of such an agreement.  Tr. at 14.  In addition to finding Ms. Collins to not be credible, the ALJ

---

[2] An electronic version of POMS is available online at https://secure.ssa.gov/poms nsf/home!readform.

held the loan agreement to be invalid because it was conditioned upon Ms. Collins' receipt of SSI benefits. Tr. at 14.

Because she found the loan agreement was not in place at or prior to the time Ms. Collins received the in-kind support, and because the agreement was contingent upon Ms. Collins' receipt of SSI benefits, the ALJ held that the loan agreement was invalid. Therefore, the ALJ declined to recalculate Ms. Collins' past due benefits.

## IV.  DISCUSSION

### A.  The ALJ Did Not Err in Determining That Ms. Collins and Her Children Did Not Make a Valid Contract to Repay Them for the In-Kind Support And Maintenance That She Received.

Ms. Collins does not dispute the ALJ's description of the facts or that she received in-kind support and maintenance from her children. Instead, Ms. Collins argues that the ALJ erred in her determination that Ms. Collins and her children did not have a valid contract for the repayment of the in-kind support and maintenance that she received. Ms. Collins posits two errors of law that she believes warrant reversal of the ALJ's decision: 1) the ALJ ignored Indiana law holding that past consideration is sufficient consideration upon which to base a binding contract; and 2) the ALJ ignored Indiana law allowing for conditional performances. Importantly, Ms. Collins fails to cite to a single case or statute supporting her arguments, and instead relies on excerpts from the Indiana Law Encyclopedia.

The loan agreement between Ms. Collins and her children fails to meet the requirements of POMS because it was not in place at the time that the in-kind support and maintenance was received and also because it was conditioned on Ms. Collins' receipt of SSI benefits. Both of these requirements are necessary in order to find that a bona fide loan agreement exists. POMS SI 00835.482 (available at https://secure.ssa.gov/apps10 /poms.nsf/lnx/ 0500835482).

6

Further, even if this Court were to ignore the requirements established by POMS and simply determine whether the alleged loan agreement is enforceable under Indiana law, Ms. Collins' claims would still fail. The ALJ found that no loan agreement was in place at or prior to the time Ms. Collins received in-kind support and maintenance from her children. This finding of fact is based on substantial evidence, and therefore will not be disturbed. In her initial application, Ms. Collins reported "I do not make payments toward the household expenses," and "I am not receiving any food or shelter from the people I live with for which I have an agreement to repay." Tr. at 17. Under penalty of perjury, Ms. Collins declared the information provided to be true and correct to the best of her knowledge. *Id*. At Ms. Collins' pre-effectuation review, Candace Collins denied the existence of any loan agreement, and James Collins stood by without mention of any agreement and without correcting Candace Collins. Tr. at 13-14. After the receipt of benefits, Ms. Collins claimed for the first time that there was a verbal agreement between her and her children. When confronted with the agreement's explicit contradiction of the testimony at her pre-effectuation review, Ms. Collins stated that her "kids did not realize that saying there was no loan agreement would cause her to receive less back pay." Tr. at 34. Finally, at the February 25, 2011 hearing, Ms. Collins testified that she had entered into a verbal agreement to repay her children for any support provided during the application process and that she would pay them back out of her past due benefits when her SSI was approved. Tr. at 124. Additionally, in her Response, Ms. Collins argues that her verbal agreement was to pay her children back out of her back pay from Social Security disability. Dkt. 34-3. Ms. Collins asserts that the verbal agreement was in place when she received the in-kind support and maintenance.

However, even if there was a verbal loan agreement in place at the time of the hearing, it is undisputed that the agreement was based on past consideration. Ms. Collins fails to cite any

7

case law which suggests this agreement should be excluded from the general rule in Indiana, which holds that past consideration is insufficient to establish an enforceable contract. For all of these reasons, the ALJ's finding that the alleged loan agreement did not constitute an enforceable agreement for the purposes of benefit calculation will not be disturbed.

## V. CONCLUSION

Accordingly, the Court **AFFIRMS** the Commissioner's decision.

**SO ORDERED.**

Date: 12/30/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov